is Davis versus an assortment of defendants. Only Davis will be arguing, so it will be on submission with respect to the appellees. And so, Mr. Perry, am I pronouncing that name right? Correct, sir. Okay. So, Mr. Perry, you have five minutes, and we'll see how it goes. If there are questions, I won't be rigid, but you may proceed. Thank you, Your Honor. May it please the Court, my name is Mark Perry from Moses and Singer, and I represent the plaintiff appellant, Eugene Davis. The Court below dismissed all of the counts of the First Amendment complaint. I'd like to begin by addressing the breach of contract claims, which are Claims 1 and 5. Mr. Davis abandoned Claims 1. Are you appealing 1? No. No. Okay. I was going to say Claim Number 1 was abandoned below when that claim was properly dismissed. However, we believe the Court erred below in dismissing Claim Number 5. That Count Number 5 is based on Section 5 of the agreement addressing the payment of Mr. Davis's expenses incurred by him in connection with any fee dispute and collection. The issue is whether Section 5 of the employment agreement survives termination as a district court erroneously concluded that because Section 5 did not have specific language stating that the section survived termination of the agreement, as did Sections 8, 9, and 10, that section did not survive. The Court below stated that the language in the agreement referencing a fee dispute and collection was not sufficient to indicate the party's clear mutual intent that the section survived after termination. We think the language does exactly that, since a fee dispute and collection action would typically occur after termination. Here, the fees and expenses at issue involve a fee dispute and collection efforts. More importantly, while the district court focused on the lack of a survival language, the Court did not focus Why do you say a fee dispute would typically occur after termination? There could easily be situations in which somebody incurred fees during the course of the representation and presented them for reimbursement, and the other says, no, you don't get this. You're right, Your Honor. It could occur both before and after, but it certainly could occur and most typically would occur after, where there's a dispute and a collection action typically is after termination, since a representative employee wouldn't commence an action while he's still an employee or absent. Typically it occurs after there's a termination. And the district court focused on the fact that there was not a specific language saying that the section survived, but what the Court did not focus on was the absence of specific language stating that the section did not survive termination. Well, but is there other sections in the agreement that say it doesn't? Yes. Section 4, Your Honor, has that such language. So we have What has such language? Section 4, Your Honor. It has language specifically saying that that section does not survive termination. So Section 5, the absence of a section saying it specifically does survive, and it also does not have language saying that it specifically doesn't survive. The lack of language addressing the survivability, one way or the other, at a minimum, creates an ambiguity that the district court should have resolved in favor of Mr. Davis. Next, I'd like to address the breach of the implied covenant count, which was count 2. Count 2 asserts a claim for breach of the implied covenant of good faith and fair dealing contained in every New York contract. A claim for the breach of the implied covenant may be brought where one party's conduct, though not breaching the terms of the contract in the technical sense, nonetheless deprived the other party of the benefit of its bargain. That is precisely what happened here. The First Amendment complaint alleges that Davis was hired to help restore the companies to financial health. Mr. Davis was to receive a fee calculated in a formula set forth in the agreement if he was successful in achieving a principal reduction in the tranche 2 debt. After Mr. Davis had completed all of the actions necessary to ensure that a principal reduction would occur, the investor defendants threatened Mr. Davis by saying that unless he voluntarily relinquished his incentive fee, he would be terminated. While not technically breaching the terms of the agreement, by terminating him, it deprived Mr. Davis of the benefit of his bargain. The district court dismissed count 2 on two grounds. First, the district court found that the facts offered in support of that count were the same, and they were supporting a separate claim of breach of contract. We disagree. The breach of the implied covenant claim is based on the additional fact that the defendants, with the knowledge that Mr. Davis' incentive fee would be earned, intentionally removed him as creditor representative in bad faith for the sole purpose of depriving him of the incentive fee. The second ground the district court based its... The obligation to pay the incentive fee was an obligation on the issuer defendant, was it not? It's the, not the, not the, not the, you're right, Your Honor. It's not the, it's the obligation of the, of the Torsion-Sion defendants, who are the successors of the companies who were part of that company who hired him. Not the investors. The investor defendants were not the ones who were obligated to, but they were the ones that... So how is it bad faith on the part of the person obligated to pay the fee that a different person, the person who's entitled, the entity that's entitled to remove him from the job threatened him with removal? Because they... Somebody else... Those defendants knew that he was, that he had earned that fee, and that they were acting... Well, maybe they were in bad faith, but that doesn't put the issuer defendant, that doesn't put the obligee in bad faith. Well, I think it, I think it does, Your Honor, because they're, they knew what's happening, and they know an agreement here where Mr. Davis had earned his fee, had achieved... Terminate him at any time, right? Under the indenture and the engagement letter. Yes, Your Honor, they did. So... That's why it's not a... So, because a third party was urging your client to basically give up the termination, the principle reduction incentive, that's bad faith on the part of the parties to the contract? No, Your Honor, the problem is that they were acting, and they all were acting in a group, and the, we call them the investor defendants, essentially the bondholders and their representatives, knew that this principle reduction would occur, which was the basis of the incentive fee, and they knew that he had already taken all the steps necessary to earn it, and so they wanted to take steps to... So you're saying they were in bad faith? What? So you're saying those investor defendants were in bad faith? Yes, sir. Well, but that's not the issue. The issue... The issue is whether that applies then to the, to the, whether, well, the issue is whether that then makes the, of course, the OSEON defendants, the people who are parties to the contract as their successors, whether it's their, whether they're responsible for going ahead with this termination, which we believe breaches this underlying covenant. Well, I could imagine, I could imagine you're pleading facts that would sustain that argument, but they aren't pleaded here. Well, I think that the knowledge is pled, and knowledge, I think, is important here, Your Honor. They knew that this fee had been earned, and that they knew that steps were being taken to deprive him of an incentive fee that had been rightfully earned. But this particular count, count two, is a implied covenant that's intentionally done to deprive him of his fee. Bad faith is an element of count two. It's an element of count four, which I'll address, you know, the next point. In count two, the first, the OSEON defendants, as we refer to them in our papers, the parties to the agreement, they knew that he had earned this fee. They knew that he was being removed to avoid that fee, and we believe that breaches the implied covenant of good faith and fair dealing. Bad faith isn't a requirement with regard to that particular count. The next count was dismissed improperly, we believe, Your Honor, is count four, which is the tortious interference count. You have existence of a valid contract, defendant's knowledge of the contract, the intentional procurement of a breach of that contract, an actual breach, and damages. All of those elements are present here. The district court found that there was no breach of contract, so that claim should be dismissed. One of those elements is the intentional procurement, and the tortious interference count has an element of bad faith to it, which we believe is clearly present here by the threats and the conduct of the investor defendants. I would like to ask you a question about the district court's reliance on the Second Circuit case of Harris against Provident Life. That case enunciated a rule, a New York rule, said it was reliant on a New York rule, which I'm not sure exists, and I'm not sure it makes any sense. The rule referred to was the proposition that when one sues under the covenant of good faith and fair dealing that is implicit in a New York contract, that claim cannot be pled, cannot be deemed a valid claim, if it is joined with a claim for breach of contract by failing to make some payments or whatever, based on the same facts. That seems to me to be a bizarre proposition, because it is generally true throughout our Anglo-American law that one can plead claims in the alternative. So if you can plead a claim for breach of the covenant of good faith and fair dealing, how does it become unpleadable because it's joined with another claim? Your Honor, we agree with you completely. But I'm not sure that gets you out of the woods, because then the question is whether facts were pleaded that could sustain a claim of breach of the covenant of fair dealing. But what about the underlying New York cases? They don't seem to me to say what our courts, how our court interpreted them in Harris, do they? Well, no, Your Honor. I think that the district court's reliance on the fact that this case was duplicative and should be dismissed is hard to reconcile with Federal Rule of Civil Procedure 8, which allows for alternative pleadings. And at any rate, as we started this conversation- Isn't that also true of New York law? Yes. But importantly, Your Honor, I think here there's a difference between the facts that are pledged and the different causes of action. The count that's still remaining, count 2, which is the breach of the implied covenant, has an important distinction, which is that there was actual conduct that was known to all of the parties that was done intentionally to deprive Mr. Davis of his benefits of his agreement, which is what the count is designed to protect against, which we think is precisely the facts that happened here, Your Honor. Is there a New York case, as opposed to a Federal case referring to the law of New York, is there a case by a New York authority, and particularly the New York Court of Appeals or at least an appellate division, that utters the rule that Harris purported to find in New York law? Not that I'm aware of. Well, I just want to be clear. You're talking about between counts 1 and 2, right? Correct. You plead count 2 in the alternative. Correct. But generally, under New York law, when you plead in the alternative, it's because there's a question as to whether there's a valid contract or to the meaning of that contract. Yes, Your Honor. But that's not the case here. There's no question about whether there's a valid contract or the terms of the contract here. Well, the question is whether there was a technical breach. And Mr. Davis concluded, after we commenced this action, that there was no technical breach of the amendment, of the contract, sorry. But we do believe that there was a breach of this implied covenant of good faith and fair dealing, since the act was intentionally done to deprive him of his incentive fee that he had earned. But, I mean, I think that seems a little too cute to say that there's no breach of contract because it's a technical breach or not a technical breach, but there is a violation of the covenant of good faith and fair dealing. And so in what respects does the contract not cover the dispute in issue? You're saying that the contract shouldn't have allowed your client to be fired at will. No, I don't think that's right, Your Honor. Well, that's what the contract provides. It provides he can be fired at any time. I agree, and we're not saying that he can be fired. And you're saying that actually the contract doesn't mean that. He can't be fired at any time because they should have paid him the principal reduction incentive. They should have paid him the incentive fee, yes. That's the point, Your Honor. Again, so how does that contract not cover this scenario? I think it doesn't cover it because it doesn't contemplate that all of the work that had been done to achieve that fee had been completed when they intentionally terminated to avoid paying that fee. And everyone there knew that. And that's that element of intent. For two years after the termination, right? Well, it was 18 months, Your Honor. It's a, you know, a restructuring of a sophisticated oil company. That's not a huge amount of time in the restructuring world. But all the work that was necessary to achieve the principal reduction had been occurred. The parties knew that and said we don't want to pay you that fee, and if you don't do it, we will terminate you. I don't see where the complaint pled facts sufficient to support the argument that there was a breach of the covenant of good faith and fair dealing. I can well imagine a pleading that would support that, but I don't see it here. I think it's in the section. You said before just that it's knowledge, that the knowledge of what? I think it's the facts relating to the threat, Your Honor. They know that the amount, the work that was necessary to achieve the incentive fee, the principal reduction, had been done. And knowing that, they threatened Mr. Davis that unless he relinquished his fee, he'd be terminated. That's motivation, which is typically hard to prove when you're trying to show bad faith. You have to make an assumption from facts and circumstances. But here we have- It wasn't the contract obligor that so threatened him. But the contract obligor was the one that initiated the termination and actually knew that. They knew the same facts and circumstances, and they knew that by terminating they would breach this covenant by denying Mr. Davis the incentive fee that he had already earned. Well, if he'd already earned it out of the contract, I guess I'm still having trouble understanding why that wouldn't be a breach of the contract. Well, because as we talked about with regard to Section 5, Section 4 says that he has to be an employee to receive that incentive fee. All right. Well, we will reserve decision. But we got our money's worth, so thank you very much, Mr. Perry. I appreciate the extra time. Thank you, Your Honors. Thank you. Appreciate it.